# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WARREN T. FLETCHER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-18-3567 |
| DAYENA M. CORCORAN, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Warren T. Fletcher, who is representing himself in this suit, brings this civil action pursuant to 42 U.S.C. § 1983 against former Commissioner of Correction Dayena M. Corcoran; Assistant Commissioner of Correction Carolyn J. Scruggs; Richard Graham, Warden of Western Correctional Institution ("WCI"); Frank B. Bishop, Warden of North Branch Correctional Institution ("NBCI"); WCI correctional officers David Donaldson; Todd Erdos; William Logsdon; Lt. James Smith; David Hedrick; and Sgt. William Slate (collectively, the "Correctional Defendants"); Dennis Martin, RN; Sergeant Purnell; Officer Wilson; Officer Matthew Davis; Adjustment Hearing Officer ("AHO") Supervisor George Gregory; AHO David Sipes; and Intelligence & Investigative Division ("IID") Detective Rodney Likin.[1]  Compl., ECF No. 1. Fletcher asserts a violation of his constitutional rights arising from the Defendants' use of excessive force, failure to follow proper procedure during the course of his adjustment hearing, retaliation, and the conditions to which he was subjected at WCI.  *Id.* at 5-19.  Fletcher seeks declaratory and injunctive relief, as well as monetary damages.  *Id.* at 3, 19-20.

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants William Logsdon and Lt. James Smith.

On May 24, 2019, the Correctional Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 32. Fletcher was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the Correctional Defendants' Motion could result in dismissal of the Complaint. ECF No. 33. Fletcher did not respond.[2]

On June 24, 2019, Defendant Martin filed a Motion to Dismiss or Alternatively, for Summary Judgment. ECF No. 37. Fletcher filed a response accompanied by an affidavit, ECF No. 40, to which Martin replied. ECF No. 41. Thereafter, Fletcher filed a Motion for Temporary Restraining Order and/or Preliminary Injunction ("TRO"), seeking transfer from WCI. ECF No. 43.[3]

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). Fletcher's Motion for TRO shall be denied without prejudice, Martin's Motion shall be denied, and the Correctional Defendants' Motion shall be granted in part and denied in part.

## Background

### A.     Complaint Allegations

In an unverified Complaint filed on November 19, 2018, Fletcher claims that on January 30, 2016,[4] while he was housed at WCI, Officer Donaldson placed him in handcuffs and stated that he should slam Fletcher's head through the window because he heard Fletcher announce over the institutional intercom that he was going to kill correctional officers. Compl. at 5, 13, ECF No.

---

[2] Initially, Fletcher stated that he did not receive a copy of the Correctional Defendants' Motion. ECF No. 34, 35. On June 28, 2019, a copy of the Motion was hand-delivered to him. ECF No. 39.

[3] Defendants' Responded to the Court's Order to Show Cause. ECF Nos. 45, 46. Fletcher replied. ECF No. 47.

[4] Fletcher wrote "2018" in his Complaint, but this appears to have been done in error based on his remaining allegations.

1.[5] Sgt. Purnell and Officer Erdos then slammed Fletcher to the floor stating, "Nigger we will kill your black ass," and forced him to walk in a squatting position from Housing Unit ("HU") #3 to HU #4, causing extreme pain to Fletcher's shoulders. *Id.* at 6, 13. Upon arriving at HU #4, Sgt. Purnell announced that Fletcher was talking about killing correctional officers, "which motivated Officer Logsdon . . . to slam the Plaintiff to the floor punching the Plaintiff's body." *Id.* at 6, 14. Fletcher laid on his side to avoid Officer Logsdon's strikes to his "private area" but Officer Logsdon started kicking his sides instead, breaking two ribs. *Id.*

After forcing Fletcher to apologize, Officer Purnell placed him in a security cage. *Id.* at 14. As Fletcher sat on the floor, Officer Davis walked in, stating "I remember your racist black ass . . . can not nobody save you racist black ass today." *Id.* at 6-7, 14. Still within the security cage, Fletcher looked up, at which time Officer Davis sprayed pepper spray directly into his face. *Id.* at 7, 14-15. Officer Wilson then arrived, making derogatory remarks, and spit into Fletcher's hair. *Id.* at 7, 15.

Officer Logsdon ordered Fletcher to stand up and remove his clothes for a strip search. *Id.* Fletcher complied, and when he turned around, Officer Wilson sprayed pepper spray into his rectum and buttocks. *Id.* When Fletcher turned back around, Officer Wilson continued to spray his face. *Id.*

Fletcher was taken to the medical unit, where Defendant Martin refused to "take the appropriate actions" or wipe the pepper spray from Fletcher's face. *Id.* at 7; Fletcher Affidavit at ¶2, ECF No. 40-1. Martin also refused to listen to Fletcher's complaints about pain in his side, shoulders, and face. ECF No. 1 at 16. Instead, he took Fletcher's vital signs then allowed the

---

[5] All references to exhibits reflect their electronic pagination.

officers to drag Fletcher away. *Id.*; ECF No. 40-1 at ¶4. Fletcher avers that Martin falsified the medical records to indicate that a physical examination was completed. ECF No. 40-1 at ¶6.

Officer Logsdon then took Fletcher to the B-tier shower, where another inmate handed him milk to wash his face and buttocks. *Id.* at 16. Fletcher asked to return to the medical unit, but Officer Logsdon refused and instead brought Fletcher to an isolation cell, where he remained until February 6, 2016. *Id.* at 8, 16. According to Fletcher, the cell had no mattress, blanket, shower, or running water, and had a temperature of five degrees with snow covering the cell floor after it had come in through the cracked window. *Id.* On January 31, 2016, HU manager Lt. Smith interviewed Fletcher but failed to take appropriate actions to remedy the conditions. *Id.* In addition, Officer Hedrick refused to bring him meals on several occasions out of retaliation. *Id.* at 8.

On January 31, 2016, Fletcher was seen by Michele Shultz, RN, who noted that he had left rib and right wrist pain. *Id.* at 17; *see also* Medical Records at 6, ECF No. 40-2.

On February 10, 2016, AHO Sipes conducted the adjustment hearing regarding the January 30, 2016 incident, with Officers Logsdon and Wilson present. ECF No. 1 at 17. At that time, Officer Davis claimed that Fletcher physically assaulted him in front of Officer Hedrick, and that Officer Davis deployed pepper spray in response. *Id.*

Fletcher claims that on February 12, 2016, the IID unit was contacted by the governor's office, which requested an investigation into the unnecessary use of excessive force at WCI. *Id.* at 8. Fletcher states that Det. Likin deliberately misled the public officials to prevent having criminal charges filed against WCI correctional officers. *Id.*

On April 6, 2016, Officer Hedrick retaliated against Fletcher by fabricating a notice of infraction. *Id.* at 9. Fletcher alleges that WCI correctional officers incorrectly told the adjustment

hearing officer that he waived his right to appear at the subsequent hearing. *Id.* On June 6, 2016, Sgt. Slate and AHO Sipes retaliated against Fletcher by falsifying the waiver, leading to 180 days of punitive segregation, a loss of 500 good conduct credits, and the indefinite loss of visitation privileges. *Id.* at 10.

On June 15, 2016, Officer Logsdon told Fletcher that he would kill him before allowing Fletcher to file suit. *Id.* at 10. Fletcher notified former Commissioner Corcoran, who did not take any action. *Id.*

On July 25, 2016, Fletcher appealed Sipes's decision to the Commissioner. *Id.* On October 19, 2016, Assistant Commissioner Scruggs remanded the case and directed Sipes and Sgt. Slate to conduct a de novo hearing. *Id.* at 11. A copy of Scruggs's decision was sent to Warden Graham and Defendant Gregory, both of whom failed to enforce the ruling. *Id.*

## B. Defendant Martin

Fletcher's medical records indicate that he was brought to the WCI medical unit at approximately 11:07 a.m. on January 30, 2016 with complaints of pepper spray exposure. Med. Records at 3, ECF No. 37-3. During the visit, Martin performed a physical examination and noted that Fletcher's gait and extremity range of motion were within normal limits, he was able to bear his full weight, his pulse was normal, he had good capillary refill, his lungs were clear, his bowel sounds were normal, his skin was warm and dry, and he was alert and oriented times three. *Id.* Fletcher did not report any injuries, and Martin observed no swelling, abrasions, open areas, or bruises. *Id.* After the exam, Martin directed Fletcher to shower and to change his clothes. *Id.* at 3-4. He advised Fletcher to increase his fluid intake and to file a sick call request if his symptoms did not subside or if they showed signs of infection. *Id.*

Martin next saw Fletcher two days after the altercation, on February 2, 2016, for a "security request wellness check" as Fletcher was "being moved out of B1 cell." *Id.* at 6. Martin observed no significant changes or complaints, and he noted "no reports or signs of pain or distress." *Id.*

On February 3, 2016, Fletcher filed a sick call request alleging injuries suffered during his altercation with the WCI correctional staff on January 30, 2016. Sick Call Requests at 2, ECF No. 37-4. In pertinent part, he complained of fractured ribs and that his "rectum and testicals [sic] are burning [due] to chemical agent." *Id.*

On February 4, 2016, Fletcher was brought to the medical unit and examined. ECF No. 37-3 at 8. The provider noted "no injuries" and filed a report pursuant to the Prison Rape Elimination Act ("PREA"), notifying the WCI medical director, warden, and PREA coordinator. *Id.* Fletcher returned to the medical unit on February 9, 2016, claiming he was "assaulted on 1/30 and no one followed . . . up." *Id.* at 11. At that time, his left ribs were sore to the touch and his lung sound was diminished. *Id.* X-rays of his shoulder, wrist, and ribs were ordered. *Id.*

On February 10, 2016, Fletcher was seen by Robustiano Barrera, MD, who noted that he had "extreme tenderness over the left lower ribcage" and "healing tender areas over the ventral surface of the scrotum, 2 lesions about 0.5 cm diameter." *Id.* at 17. On February 15, 2016, the results of Fletcher's x-rays indicated an "acute fracture of the left 9th rib with minimal displacement" and "no acute lung abnormality." X-Ray Requisition at 2, ECF No. 37-5.

## C. Correctional Defendants

Officer Donaldson states that on January 30, 2016, he heard Fletcher making threats against correctional officers over the intercom system in an attempt to incite other inmates to attack them. Donaldson Decl. at ¶3, ECF No. 32-5. In the Notice of Inmate Rule Violation written by Donaldson, he recalled Fletcher saying, "We need to do something to these bitches. All that these

C.O.'s are worried about is going home at 4 o'clock. We are coming out for rec. at 12:30 and I'm telling you all, we need to take care of them then." Adjustment Docket at 9, ECF No. 32-6. Donaldson told Fletcher to come to the front of the tier and placed him in handcuffs. *Id.* Fletcher then began to incite other inmates on the tier again by yelling: "They are locking me up! Purnell is a fucking bitch!" *Id.* At that time, Fletcher was advised that he would be receiving an infraction, and Sgt. Purnell and Officer Erdos escorted him to HU #4. *Id.* at p. 9. Donaldson states that at no time did he threaten to slam Fletcher's head through a window or threaten him in any other manner. ECF No. 32-5 at ¶3.

Officer Erdos states that Fletcher was escorted to HU #4 without incident and upon arriving in that unit's lobby, HU #4 staff took over. Erdos Decl. at ¶3. According to Erdos, Fletcher was not forced to walk in a squatting position; rather, he was escorted with a cupped grip around his bicep. *Id.* at ¶4. Erdos further states that neither he nor Sgt. Purnell slammed Fletcher to the ground or verbally threatened him. *Id.* at ¶5.

Officer Logsdon states that on January 30, 2016, he was assigned as HU #4 Segregation Unit's escort officer, and he assisted with escorting Fletcher to the secure property room holding area so that Fletcher's property could be inventoried and Fletcher could be strip-searched. Logsdon Decl. ¶4, ECF No. 32-8. Upon placing Fletcher in the holding area, Logsdon exited and returned to his post. *Id.* A few minutes later, Logsdon smelled pepper spray coming from the holding area, and he returned to find Officers Davis and Hedrick. *Id.* Logsdon denies slamming Fletcher to the floor or punching, kicking, choking, or threatening to kill him. *Id.* at ¶5.

A Notice of Inmate Rule Violation reported by Officer Davis states that when Fletcher was in the HU #4 strip cage waiting to be strip-searched, Officer Davis ordered him to take off his shirt and hand it through the pass through slot. ECF No. 32-6 at 15. As Davis grabbed Fletcher's shirt,

Fletcher suddenly grabbed the left sleeve of Davis's sweatshirt and pulled Davis's arm through the slot. *Id.* Davis immediately jerked his arm back through the slot; however, Fletcher would not let go of his sweatshirt. *Id.* Officer Hedrick, who was standing behind Davis, grabbed Davis's waist and pulled him away while Fletcher maintained his hold of the sweatshirt. *Id.; see also* Hedrick Decl. at ¶3, ECF No. 32-9. Both Officers Davis and Hedrick ordered Fletcher to release his hold on the sweatshirt, but he did not comply. *Id.* At that point, Davis pulled his pepper spray and applied a short burst to Fletcher's face, causing him to release his grip and fall back into the strip cage. *Id.* After Fletcher released his grip, Davis exited the area with his sweatshirt torn and a small abrasion on his left hand. ECF No. 32-6 at 15. Fletcher was informed that he would be receiving an infraction for his actions. *Id.*; *see also* Serious Incident Report, ECF No. 32-10.

Officer Hedrick handcuffed Fletcher, escorted him to HU #4's medical room, and upon completion of his medical evaluation, escorted him to the shower. ECF No. 32-9 at ¶3. Later that same day, Carla Buck, RN noted in the medical record that there was no contraindication for moving Fletcher to the segregation unit. Medical Records at 4, ECF No. 32-11. Due to Fletcher's violation of inmate rule #100 (assault on staff), for pulling Officer Davis into the pass through slot, Fletcher was placed on staff alert status in accordance with WCI.110.0006.1, and he remained on that status until February 2, 2016, when he demonstrated positive behavior and compliance with staff. Smith Decl. at ¶¶3-4, ECF No. 32-12; *see also* Fletcher's Traffic History, ECF No. 32-13; WCI.110.0006.1, ECF No. 32-14; Staff/Behavioral Alert Designation Notice, ECF No. 32-15; Record of Segregation Confinement, ECF No. 32-16.

Lt. Smith states that at no time was Fletcher placed in a cell with the window propped open with snow coming through the window. ECF No. 32-12 at ¶5. Cell temperature in the housing unit is closely monitored, and staff has no means to turn off the heat to an individual cell. *Id.* Cells

are inspected by staff between each inmate's use and they are cleaned by inmate workers. *Id.* at ¶6. Part of the staff's inspection includes ensuring that the toilets and sinks are in proper working order. *Id.* According to Lt. Smith, Fletcher made no complaints regarding injuries he may have received during the January 30, 2016 incident. *Id.* at ¶7.

On February 10, 2016, an adjustment hearing was held regarding Fletcher's actions on January 30, 2016. ECF No. 32-6 at 1-6. After hearing from Fletcher and the correctional officers, AHO Sipes found Fletcher guilty of violating inmate rule #101 (assault or battery on staff) for pulling Officer Davis through the slot; rule #104 (use of threatening language) for telling Officer Donaldson, "If I didn't have these cuffs on, it would be on between you and me;" and rule #400 (disobeying a direct lawful order). *Id.* at 5. AHO Sipes stated that he found the officers' reports credible and Fletcher's testimony unpersuasive. *Id.* However, AHO Sipes found Fletcher not guilty of violating rule #100 (being involved in a disruptive activity) because the officers did not state how they identified Fletcher's voice over the intercom, when he allegedly incited other inmates. *Id.*

AHO Sipes noted that Fletcher's adjustment history was poor. *Id.* Fletcher received 90 days of disciplinary segregation and a credit revocation of 120 days for violation of inmate rule #101; a consecutive 90 days of disciplinary segregation for violation of inmate rule #104; and no segregation time or credit revocation for violation of inmate rule #400. *Id.* at 1, 5. Fletcher also received an indefinite mandatory visitation suspension for violation of inmate rule #101, effective on February 10, 2016, with an eligibility reinstatement consideration date of August 10, 2017. *Id.* at 1, 6.

By February 18, 2016, an internal investigation concluded that staff acted appropriately and within the scope of their authority established in the Use of Force Manual during the January

30, 2016 incidents.  *See* ECF No. 32-10.  No video footage exists due to the area where the incident occurred.  *Id.*

On February 5, 2016, Captain George Sneathen contacted the IID to report Fletcher's allegation that on January 30, 2016, he was sprayed in the buttocks with pepper spray by an "unknown officer" during a strip-search and that another "unknown officer" struck him in the testicles with a pair of handcuffs.  IID Check Sheet at 2, ECF NO. 32-18.  As a result, IID Case No. #16-35-00235 I/C was initiated and Det. Likin was assigned to investigate the matter on February 8, 2016.  *Id.*  Det. Likin reviewed medical and psychological reports, as well as pertinent documentation and photographs; interviewed Fletcher, medical, psychology, and custody staff, and AHO Sipes.  *Id.* at 7-37.

On March 1, 2016, Fletcher agreed to submit to a polygraph.  *Id.* at 33.  On March 28, 2016, three polygraph examinations were conducted, all of which Fletcher failed, showing "deception" on all three examinations.  *Id.* at 34, 37, 223-30.  After the first examination, Fletcher could not provide any reason why he scored deceptive.  *Id.* at 34.  After the second and third examinations, Fletcher still could not provide reasons why he scored deceptive, but maintained he was telling the truth.  *Id.*  Det. Likin indicated that he had received multiple letters from various agencies pertaining to correspondence they received from Fletcher regarding his allegations.  *Id.* at 37.  According to Det. Likin, Fletcher repeated the same allegations, but the "injuries described in the letters vary from agency to agency."  *Id.*  Based on the record before Det. Likin, a charging document was not obtained.  *Id.*  Det. Likin concluded that there was no evidence to support Fletcher's allegations of physical assault, and requested that the case be closed as there was no further investigation needed.  *Id.*

On April 6, 2016, Officer Hedrick was conducting segregation rounds with Psychology Nurse K. Brown when Fletcher called Hedrick over to his cell and asked, "Can I talk to you for a minute." Notice of Inmate Disciplinary Hearing at 2, ECF No. 32-19. When Hedrick came over, Fletcher then stated, "I am going to kill you and your fucking wife. You're a bunch of fucking whores." *Id.* 2. Hedrick asked Fletcher if he was threatening him and his wife, and Fletcher responded, "yes." *Id.* Hedrick then informed Fletcher that he would be receiving an infraction for threatening staff (inmate rule violation #104), and Fletcher was placed on Staff Alert status. *Id.*

Fletcher's adjustment hearing for the April 6, 2016 incident, initially scheduled for May 13, 2016, was postponed on Fletcher's request. *Id.* at 6. The hearing was rescheduled for June 6, 2016; however, a correctional officer submitted an Inmate Waiver of Appearance on that day, stating that Fletcher wished to waive his appearance. *Id.* at 4. According to the officer, Fletcher refused to sign the waiver form. *Id.*

The adjustment hearing on June 6, 2016 was held in absentia. *Id.* at 6-8. At the hearing, AHO Sipes found Officer Hedrick's report credible and reliable, finding Fletcher guilty of inmate rule #104, and noting that Fletcher had used threatening language on ten prior violations. *Id.* AHO Sipes imposed 180 days of disciplinary segregation and revoked 120 credits. *Id.* The Inmate Hearing Record indicates that later that day, Fletcher refused to sign the receipt for AHO Sipes's ruling. *Id.* at 5. On July 5, 2016, Warden Graham affirmed the AHO's decision and sanctions. *Id.* at 1-12. Fletcher signed the Notice of Inmate Hearing Record on September 6, 2016. *Id.* at 10.

On June 13, 2016, Fletcher wrote to Lt. Smith and former Commissioner Corcoran alleging retaliation and conspiracy and alleged constitutional violations regarding his adjustment hearing. Letter at 4-6, ECF No. 32-20. In a letter from the Office of the Acting Chief Hearing Officer dated June 22, 2016, Fletcher was advised that he failed to demonstrate that the decision in his case was

unreasonable, clearly erroneous, or procedurally in error; therefore, a determination was made that the decision was a reasonable one, and there was no evidentiary or procedural cause to justify an intervention by the Office of the Commissioner. *Id.* at 3. However, in a letter from Acting Commissioner Carolyn Scruggs dated October 19, 2016, she indicated that although AHO Sipes granted Fletcher a postponement on May 13, 2016, for the purpose of securing a witness, he did not document the name of the witness in the written record, and there was no audio recording from that date. *Id.* at 1. In addition, Scruggs stated that on June 6, 2016, AHO Sipes noted a waiver of appearance form had been submitted; however, the waiver form was not placed in the "event files," and case management and custody staff were unable to locate the form for review at that time. *Id.* She noted that there also was no audio record from the hearing of June 6, 2016, so the form was not read into the record, and Fletcher was found guilty in his absence. *Id.* Thus, Scruggs ordered AHO Sipes to conduct a "de novo remanded hearing to include a preliminary hearing where appropriate rulings would be made regarding any witness or evidence requests," and to ensure that all proceedings before him are audio recorded and thoroughly documented. *Id.*

Sgt. Slate states that on June 6, 2016, he was the adjustment hearing coordinator at WCI, and in that capacity, he was in charge of scheduling adjustment hearings and representing WCI during the adjustment hearing process. Slate Decl. at ¶3, ECF No. 32-21. According to Sgt. Slate, the scheduling of adjustment hearings is done by pulling inmate names directly off of the Offender Case Management System ("OCMS") disciplinary dashboard. *Id.* at ¶5. There are only two (2) ways an adjustment coordinator knows a case has been remanded: by receiving the letter issuing the remand and/or as a result of the OCMS disciplinary dashboard being changed to read "remanded." *Id.* at ¶6. Only the Chief Hearing Officer and the Commissioner of Correction can

change the OCMS disciplinary dashboard once a decision made by a hearing officer is made and entered into OCMS. *Id.* at ¶9.

Sgt. Slate states that he did not receive the letter from Acting Commissioner Scruggs dated October 19, 2016, instructing the institution and AHO Sipes to conduct a de novo remanded hearing of Fletcher's June 6, 2016 adjustment hearing. *Id.* at ¶8. Sgt. Slate avers that if he received the letter or viewed the OCMS dashboard showing a remand of Fletcher's hearing, he would have arranged to have the case reheard. *Id.* at ¶10.

Michael Yates, the Correctional Case Management Supervisor at WCI, states that in gathering information regarding this case for the Office of the Attorney General, he discovered that on October 19, 2016, Acting Commissioner Scruggs had ordered AHO Sipes to conduct a new de novo remanded hearing pertaining to Fletcher's June 6, 2016 adjustment. Yates Decl. at ¶3, ECF No. 32-22. Yates states that the remanded hearing was never conducted. *Id.* at ¶3. On April 26, 2019, Yates contacted Acting Chief Hearing Officer Kimberly Stewart and advised her of the situation and the fact that the remanded hearing was never conducted. *Id.* at ¶4. Stewart dismissed the charge due to the time lapse and restored the 120 days of good conduct credits that were revoked. *Id.*

### Motion for Temporary Restraining Order and/or Preliminary Injunction

On August 19, 2019, Fletcher filed a Motion for TRO seeking an Order directing Defendants to stop retaliating by imposing cruel and unusual punishment. ECF No. 43. In support of the Motion, Fletcher states that he had previously been transferred to NBCI but was transferred back to WCI on August 6, 2019. *Id.* at 2. Fletcher states that he fears for his life, as he is being

housed near the named Defendants, but provides no specific instances detailing any actions on the Defendants' part.[6] *Id.* at 2-4.

On September 6, 2019, the Correctional Defendants responded to Fletcher's Motion, arguing that Fletcher is not entitled to injunctive relief. ECF No. 45. According to the Correctional Defendants, Fletcher was transferred back to WCI after Executive Order 01.01.20001.02 mandated NBCI to install devices to regulate water consumption by inmates in the housing units, necessitating the move of inmates from NBCI to WCI. *Id.* at 3. In addition, Fletcher's cellmate at NBCI had filed a PREA claim against him, and the two were identified as documented enemies. *Id.* at 2.

To obtain a preliminary injunction, a plaintiff must establish that (1) the plaintiff is likely to succeed on the merits, (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the plaintiff's favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). The plaintiff must satisfy all four of these requirements. *See Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

Here, Fletcher fails to establish that he is likely to suffer irreparable harm in the absence of preliminary relief. At a minimum, he has not demonstrated that he is facing imminent harm as a result of being housed at WCI. Although he claims that he fears for his life, he has not detailed

---

[6] Fletcher's sole allegation is that NBCI staff has been holding his mail. ECF No. 43 at 3.

any actions taken by Defendants for the purpose of causing him harm.  As Fletcher fails to meet

the second factor, his Motion for TRO shall be denied without prejudice.[7]

## Standards of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief

above the speculative level on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations

omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the

elements of the claim.  However, the complaint must allege sufficient facts to establish those

elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the moving

party demonstrates that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).  In assessing the motion, the district court must view the facts in the light most

favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor.  *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The court may rely only on facts supported in the

record, not assertions in the pleadings.  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514,

522 (4th Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under the

---

[7] Moreover, it is well established that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison rather than another absent a showing of significant hardship. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest).

governing law," *Anderson*, 477 U.S. at 248, and a dispute of material fact is "genuine" only if sufficient evidence for the trier of fact to return a verdict for the nonmoving party. *Id.*

## Analysis

### A. Defendant Martin

Dennis Martin, RN moves for dismissal of the claims against him or for summary judgment in his favor. ECF No. 37-1. Martin asserts that Fletcher has not set forth sufficient facts to show that he acted with deliberate indifference to Fletcher's medical needs, primarily because Martin was unaware that Fletcher was suffering from a serious injury on January 30, 2016. *Id.* at 1, 11. For the reasons that follow, Martin's Motion, construed as one for summary judgment, shall be denied.[8]

The claims concerning Fletcher's medical care are raised as Eighth Amendment claims. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendant, or his failure to act, amounted to deliberate indifference to a serious

---

[8] Because Martin's and the Correctional Defendants' Motions were titled "Motion to Dismiss or Alternatively, for Summary Judgment" and filed along with documents in support, and Fletcher also submitted several exhibits to support his contentions, Fletcher was on notice that the Court could treat the Motions as ones for summary judgment and rule on that basis. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).

medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eight Amendment claim requires proof that the defendant was subjectively reckless in treating or failing to treat the serious medical condition.  *See Farmer*, 511 U.S. at 839-40.  Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'"  *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.").  "Actual knowledge or awareness

on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Here, it is unclear whether Martin was aware that Fletcher was suffering from extreme pain in his ribs when he was brought to the WCI medical unit on January 30, 2016. Martin points to the medical record to note that Fletcher's chief complaint for the visit was "pepper spray exposure." *See* ECF No. 37-1 at 5. In Fletcher's affidavit, however, he states that upon his arrival, he could not see "nor adequately breathe or function in such pain." ECF No. 40 at ¶2. Fletcher further states that Defendant Martin refused to wipe the pepper spray from his face or examine him at all. *Id.* In his Complaint, Fletcher recounts that his visit with Martin lasted approximately two minutes, during which Martin refused to listen to "what I had to say about the pain that existed in my side, shoulders and face." ECF No. 1 at 16. He also attaches a photograph taken during that medical visit where he appears agonized with his eyes closed, and medical records from the following day indicating that he complained of pain in his ribs. ECF No. 40-2 at 2, 6. This contradicts Martin's statement that it was not until February 3, 2016 that Fletcher alleged injuries related to the altercation with correctional officers. *See* ECF No. 37-1 at 13. On February 15, 2016, an x-ray confirmed that Fletcher suffered from a broken rib. *See id.*

Based on this record, there remains a genuine dispute of material fact as to whether Martin knew Fletcher was experiencing pain in his ribs and subsequently failed to examine or treat him

for that injury.  Accordingly, I will deny Martin's Motion as to Fletcher's claim of deliberate indifference to a serious medical need.

###### B.    Correctional Defendants

The Correctional Defendants move for dismissal of the claims against them or for summary judgment in their favor for failure to state a claim on which relief may be granted.  ECF No. 32-2. Specifically, they assert that Fletcher's claims that he was subjected to excessive use of force and unconstitutional conditions; falsely accused of improper conduct; verbally threatened; retaliated against; and subjected to an unfair adjustment hearing, all fail to demonstrate a violation of his rights.  *Id.* at 20-25.  In addition, the Correctional Defendants assert that there is no respondeat superior liability under § 1983 and that they are entitled to qualified immunity.  *Id.* at 25-28.

Respondeat Superior

The doctrine of *respondeat superior* does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).  Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *Shaw v.*

*Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Here, other than naming Warden Bishop in the caption of the Complaint, Fletcher does not attribute any specific action or inaction on his part that resulted in a constitutional violation. As to Defendant Scruggs, Fletcher claims only that the Assistant Commissioner remanded his adjustment for a de novo hearing. These allegations fail to state a claim against either Defendant. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation).

With regard to Defendants Corcoran, Scruggs, Warden Bishop, and Warden Graham, Fletcher has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by their subordinates. Fletcher's assertions do not demonstrate a pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See Wellington*, 717 F.2d at 936 (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse").

Accordingly, Defendants Corcoran, Scruggs, Warden Bishop, and Warden Graham are entitled to dismissal.

January 20, 2016 Incident:
Eighth Amendment Excessive Force and Conditions Claims

In his Complaint, Fletcher alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when Officer Donaldson handcuffed and verbally threatened him; Officer Erdos slammed him to the floor and verbally threatened him; Officer

Logsdon slammed him to the ground before punching and kicking his body; Officer Wilson sprayed pepper spray in his face, rectum, and buttocks; and Lt. Smith kept him housed in a cell with no mattress, blanket, shower, or running water, and had a temperature of five degrees with snow covering the ground and coming in through the cracked window.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Id.*

To satisfy the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (internal quotation marks omitted).

The subjective element requires evidence that prison personnel used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In evaluating this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko,* 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

Viewing the facts in the light most favorable to Fletcher, it appears that he was restrained by WCI correctional officers after they heard him over the intercom inciting other inmates to attack officers. To the extent Fletcher alleges a constitutional violation based on Officer Donaldson's and Officer Erdos's verbal threats and efforts to restrain him, his claim fails. Verbal abuse of inmates by guards, without more, states no claim of assault. *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979).

With regard to Officer Logsdon and Officer Wilson, however, Fletcher has demonstrated that, objectively, he was subjected to a non-trivial amount of force, by submitting medical records indicating that he suffered a broken rib and lesions to his testicles. Moreover, it appears that, subjectively, the amount of force was used maliciously or sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. First, it is unclear whether Fletcher was restrained during the time he alleges Officer Logsdon kicked his sides or if he was in a strip cage when pepper spray was sprayed on his buttocks. Second, there is no allegation that Fletcher's actions at the time called for an application of force sufficient to cause Fletcher to complain of rib pain as early as the following day when he saw Nurse Schultz, or such that a subsequent x-ray revealed a broken rib and lesions were visible on his testicles. Accordingly, the Correctional Defendants' Motion as to Officer Logsdon shall be denied. Because Officer Wilson has not been served in this case,[9] the Assistant Attorney General shall be ordered to provide his last known home address, solely for the purpose of service of process, or in the alternative, to provide a statement regarding why the address is not available.[10] Given obvious confidentiality

---

[9] According to Assistant Attorney General Stephanie Lane Weber, Officer Wilson has retired from state service. ECF No. 32-2 at 1 n.1.

[10] In light of Fletcher's status as a self-represented, incarcerated litigant and the colorable claim he has stated, the Court has an obligation to assist him in identifying the correct address of this Defendant so that service of process may be effected. *See Gordon v. Leeke*, 574 F.2d 1147, 1152-53 (4th Cir. 1980); *see*

considerations, personal information regarding Officer Wilson's address shall immediately be placed under seal by the Clerk.

To the extent Fletcher alleges that he was placed in a cell with no mattress, blanket, shower, or running water, and had a temperature of five degrees with snow covering the ground and coming in through the cracked window, he raises conditions claims. In that regard, "to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta*, 330 F.3d at 634. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, Fletcher was placed in segregation following the incident on January 30, 2016. Fletcher claims that during an interview on the following day, he informed HU manager Lt. Smith about the cell conditions, and Lt. Smith failed to address them. In Lt. Smith's Declaration, he avers only that Fletcher was not placed "in a cell with the window propped open with snow coming through the window," "staff has no means to turn off the heat to an individual cell," and "[p]art of

---

*also Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 554-55 (7th Cir. 1996).

the staff's inspection includes ensuring that the toilets and sinks are in proper working order." ECF No. 32-12. Lt. Smith does not address Fletcher's allegations regarding the lack of mattress, blanket, and running water, or that the cell had frigid temperatures. *See id.* Thus, a genuine dispute of material fact exists, and the Correctional Defendants' Motion as to Lt. Smith shall be denied.

April 6, 2016 Incident:<br>False Reports, Retaliation, Due Process, and Conspiracy Claims

Fletcher alleges that on April 6, 2016, Officer Hedrick retaliated against him by fabricating a notice of infraction and thereafter, Sgt. Slate retaliated against him by falsifying his waiver of appearance at his subsequent adjustment hearing. Although a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), "there are exceptions to this rule." *Cole v. Holloway,* 631 F. App'x 185, 186 (4th Cir. 2016) (citing *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989) (holding that a false disciplinary charge may be actionable under § 1983 if retaliatory)).

Fletcher denies any wrongdoing on his part and avers that Officer Hedrick falsified the report in retaliation. Fletcher, however, fails to allege Hedrick's motivations for writing the infraction. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (noting that to state a claim of retaliation, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct). By contrast, Hedrick has submitted documentation to support his assertion that on April 6, 2016, Fletcher called him over and said, "I am going to kill you and your fucking wife." ECF No. 32-19 at 2. Hedrick then informed Fletcher that he would be receiving an infraction for violation of inmate rule #104 for threatening staff. Fletcher's

conclusory averment regarding the writing of the report is thus insufficient to withstand a dispositive motion. *See District 28, United Mine Workers of Am., Inc., v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979).

Construing his Complaint liberally, Fletcher also claims that his right to due process was violated during his adjustment hearing. In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id.* at 540, 564, 570-71. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). The mere fact that an institutional rule governing adjustment hearings was violated does not necessarily equate to a due process violation. *Riccio v. Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) ("a state does not necessarily violate the constitution every time it violates one of its rules."); *Ewell v. Murray*, 813 F. Supp. 1180, 1183 (W.D. Va. 1993) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due.").

The Correctional Defendants state that Fletcher's adjustment hearing was originally postponed to allow him to secure a witness, and that Fletcher declined to attend the rescheduled proceeding. Fletcher summarily claims that he never waived his right to appear. Meanwhile, with their motion, the Correctional Defendants attached several documents to support their assertion, to which Fletcher did not respond. The Correctional Defendants state that the rescheduled hearing was held in absentia on June 6, 2016, Fletcher was found guilty of inmate rule #104 and subjected

to 180 days of disciplinary segregation and the revocation of 120 good conduct credits, and that Fletcher eventually signed the Notice of Inmate Hearing Record on September 6, 2016.

On June 13, 2016, Fletcher wrote to Lt. Smith and former Commissioner Corcoran alleging constitutional violations regarding his adjustment hearing. In a letter from Acting Commissioner Scruggs dated October 19, 2016, she ordered a "de novo remanded hearing to include a preliminary hearing where appropriate rulings would be made regarding any witness or evidence requests," and to ensure that all proceedings before him are audio recorded and thoroughly documented. ECF No. 32-20 at 1. Sgt. Slate, who was in charge of scheduling adjustment hearings and representing WCI during the adjustment hearing process, did not receive the letter from Acting Commissioner Scruggs, nor did he view the OCMS dashboard showing a remand of Fletcher's hearing; thus, a hearing was not conducted on remand. However, when the Correctional Case Management Supervisor at WCI discovered the oversight, he contacted Acting Chief Hearing Officer Kimberly Stewart and advised her of the situation, leading to dismissal of the charge against Fletcher and restoration of the 120 days of good conduct credits that were revoked. At most, some individuals were perhaps negligent in failing to carry out a proper hearing on remand. However, based on this record, Fletcher's due process rights were not violated.

To the extent Fletcher claims a civil conspiracy under § 1983, he must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). An essential element for a claim of conspiracy to deprive plaintiff of a constitutional right, is an agreement to do so among the alleged co-conspirators. *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006-07 (4th Cir. 1987). Without an agreement, the independent acts of two or more wrongdoers do not amount to a

conspiracy. *See Murdaugh Volkswagen v. First Nat'l Bank*, 639 F.2d 1073, 1075-76 (4th Cir. 1981). Plaintiff must thus allege facts establishing that defendants shared a "unity of purpose or a common design" to injure him. *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809-10 (1946). "A conspiracy may . . . be 'inferred from the things actually done.'" *Murdaugh*, 639 F.2d at 1075 (quoting *Overseas Motors, Inc. v. Imported Motors Ltd., Inc.*, 375 F. Supp 499, 532 (E.D. Mich. 1974)). However, circumstantial evidence consisting of "coincidence piled on coincidence" are insufficient where the "proof of collusion is simply too attenuated" to conclude there was a conspiracy to violate the law. *Murdaugh*, 639 F.2d at 1075.

Here, Fletcher provides no information to support his allegation that Officer Hedrick and Sgt. Slate acted in concert to deprive him of a constitutional right. As previously noted, Officer Hedrick submitted the Notice of Inmate Rule Violation and Sgt. Slate's duty was merely to schedule adjustment hearings. Moreover, Sgt. Slate was not aware that Fletcher's case was remanded for a de novo hearing and, in any event, the institution reinstated Fletcher's good conduct credits upon discovering the oversight. The facts as presented do not establish a common design to injure Fletcher. Thus, Fletcher fails to establish a civil conspiracy.

For these reasons, summary judgment in favor of Officer Hedrick and Sgt. Slate is appropriate.

## C.     Unserved Defendants

Defendants Sgt. Purnell, Officer Davis, Det. Likin, AHO Supervisor Gregory, and AHO Sipes have not been served with the Complaint. Because Fletcher is an inmate who is proceeding *in forma pauperis*, the Court reviews the allegations against these unserved Defendants to assess whether Fletcher has stated a plausible claim for relief against them. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b). For the reasons discussed above relating to Officers Donaldson and Erdos, Fletcher

also fails to state a claim against Sgt. Purnell and Officer Davis.[11]  For the reasons discussed above relating to Officer Hedrick, Fletcher has also failed to allege facts against AHO Sipes that support a due process claim or a claim of conspiracy to fabricate evidence.  Lastly, Fletcher's unsupported allegations against Det. Likin and AHO Supervisor Gregory fail to state a plausible claim for relief. Therefore, the claims against these five unserved Defendants will be dismissed.  *See* 28 U.S.C. § 1915A(b).

## Conclusion

Fletcher's Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF No. 43) is denied without prejudice.  His claims against unserved Defendants Purnell, Davis, Likin, Gregory, and Sipes are dismissed.  Martin's Motion to Dismiss or Alternatively, for Summary Judgment (ECF No. 37), construed as a motion for summary judgment, is denied.  The Correctional Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 32) is granted in part and denied in part.  Fletcher's claims against Defendants Corcoran, Scruggs, Bishop, and Graham are dismissed.  The Motion, construed as one for summary judgment, is granted as to Defendants Donaldson, Erdos, Hedrick, and Slate, and denied as to Defendants Logsdon and Smith.  Service shall proceed as to Defendant Wilson.[12]

A separate Order follows.


____March 30, 2020_____          _____/S/_____
Date                                                         Paul W. Grimm
                                                              United States District Judge

---

[11]  Although Officer Davis sprayed pepper spray on Fletcher's face, there is extensive documentation within the Correctional Defendants' exhibits to support Davis's account that he did so only because Fletcher would not let go of his sweatshirt, causing a small abrasion on Davis's left hand.  *See* ECF No. 32-6.

[12] In light of the Court's ruling, it is not necessary to address the Correctional Defendants' qualified immunity argument at this time.